IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARCLAY WHITE SKANSKA, INC.

Plaintiff/Counter-Defendant,

v. Civil Action No.: RDB 04-3864

BATTELLE MEMORIAL INSTITUTE,

Defendant/Counter-Plaintiff.

* * * * * * * * * * * * *

MEMORANDUM OPINION

This action arises out of a Complaint filed by Plaintiff Barclay White Skanska, Inc., a corporation organized under the laws of the State of Pennsylvania, ("Plaintiff" or "Barclay") against Defendant Battelle Memorial Institute, a charitable trust organized as a non-profit corporation under the laws of the State of Ohio ("Defendant" or "Battelle"). The Complaint alleges that, *inter alia*, Defendant failed to pay monies owed to Plaintiff under a construction contract to be performed in Aberdeen, Maryland. Defendant has filed a counterclaim against Plaintiff for breach of contract. Pending before this Court are Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. Neither party has moved for summary judgment on Defendant’s counterclaim. This Court has jurisdiction under 28 U.S.C. § 1332. The parties' submissions have been reviewed and a hearing was conducted on April 6, 2006. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

BACKGROUND

In May 2001, Battelle (as Owner) and Barclay (as Contractor) entered into a Standard Form of Agreement Between Owner and Contractor in connection with the construction of the Higher Education Applied Technology Center in Aberdeen, Maryland (the "Contract"). Under the terms of the Contract, Barclay agreed to complete the project for a price not to exceed $13,350,000 (the "Guaranteed Maximum Price). (*See* Pl.'s Mem. Supp. Partial Summ. J. at Ex. B, §§ 4.2 & 5.2.1.) In return, Battelle agreed to pay Barclay the "Contract Sum," the sum of a contractor's fee of $316,250 (the "Contractor's Fee") plus costs necessarily incurred by Barclay in performing the work (the "Cost of Work"). (*Id*. at §§ 5.1.2 & 7.1.) The Contract provided that Battelle's Authorized Representative on the project would be Himes Associates, Ltd. ("Himes" or "Owner's Representative"). (*Id*.) In addition, the Contract noted that it was to be governed by the law of Maryland, the place where the Project was located. (*See* Pl.'s Mem. Supp. Partial Summ. J. at Ex. C § 13.1.1.)

Section 15.1 of the Contract provides for the incorporation of additional documents intended to form part of the Contract. The parties agreed to include American Institute of Architects, General Conditions of the Contract for Construction, Document A201 (1997), which contains the provisions of the contract that are at issue in this matter. Those provisions are:

> 4.3 **Claims and Disputes**.
>
> 4.3.1 **Definition**. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.
>
> 4.3.2 **Time Limits on Claims**. Claims by either party must be

> initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.
>
> * * *
>
> 4.3.7 **Claims for Additional Time**.
> 4.3.7.1 If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.
>
> * * *
>
> 8.3.2 Any claim for extension of time by Contractor shall be made in writing to the Owner, Owner's Representative and Architect not more than fourteen (14) days after the commencement of the delay; otherwise it shall be waived.
>
> * * *
>
> 7.2 **Change Orders**.
> 7.2.1 A Change Order is a written instrument prepared by the Owners's Representative and signed by the Owner, Contractor and Owner's Representative, stating their agreement upon all of the following: (.1) change in the Work; (.2) the amount of the adjustment, if any, in the Contract Sum; and (.3) the extent of the adjustment, if any, in the Contract Time.
>
> * * *
>
> 13.4.2. No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

(Pl.'s Mem. Supp. Partial Summ. J. at Exs. B & C.)

The parties relied on two types of documents—Proposed Change Orders and Change Order Requests—to document changes in work related to the construction project. Proposed Change Orders or "PCOs" described the potential cost of work to be performed by Barclay and were executed by Himes and Barclay. Change Order Requests or "CORs" described the actual cost of work performed by Barclay and were executed by Himes, Barclay, and Battelle.

Hundreds of PCOs and CORs were executed during the project.

Barclay and its subcontractors submitted payment applications to Battelle throughout the project. The last payment application—Pay Application 16—is dated June 30, 2003 and requests payment of $1,153,263.04. (*See* Def.'s Mem. Supp. Summ. J. at Ex. 13.) Himes reviewed Pay Application 16 to determine what portion of it should be paid by Battelle. On May 4, 2004, Himes sent Battelle a letter recommending that Battelle (a) not pay eleven disputed PCOs totaling $204,454, (b) withhold $300,000 for incomplete/deficient work, and (c) issue a final payment of $387,315 to Barclay. (*See* Def.'s Mem. Supp. Summ. J. at Ex. 10.)

On May 10, 2004, Battelle sent Barclay a letter stating that:

> Battelle's position as identified in the attached documentation is that, unless other identified costs meeting the terms of the contract are identified, the check for $387,315 represents final payment to Barclay White Skanska. If Barclay White Skanska is in disagreement, and feels monetary compensation is warranted, then please submit, per the contract, documentation substantiating the request.

(Def.'s Mem. Supp. Summ. J. at Ex. 9.) Enclosed with the letter was a check to Barclay for $387,315, a copy of the May 4, 2004 letter from Himes to Battelle, and a copy of Pay Application 16.

On June 4, 2004, Barclay responded to Battelle's May 10 letter. After addressing a number of items, Barclay stated that:

> We intend to bring suit against Battelle in order to finalize and receive final payment from your organization. We are sorry that it has come to this but we feel that we have not been treated fairly in our dealings with Battelle. There are two open change orders that have not been signed that are valued at $624,870. These are legitimate changes of scope and, per our contract, you are required to give us change orders for this work. This has not been done. Therefore, we feel our only method of solution is through the courts.

(Def.'s Mem. Supp. Summ. J. at Ex. 16.)

On October 14, 2004, Plaintiff filed a Complaint in the Circuit Court for Harford County. On December 8, 2004, Defendant filed a notice of removal asserting, as the basis for this Court's jurisdiction, diversity of citizenship pursuant to 28 U.S.C. § 1332. (*See* Notice of Removal ¶ 4.) On July 22, 2005, Plaintiff filed a four-count Amended Complaint asserting the following claims: (i) breach of contract, (ii) unjust enrichment, (iii) quantum meruit, and (iv) breach of the Maryland Prompt Payment Act.[1] On November 30, 2005, Plaintiff filed its Partial Motion for Summary Judgment and Defendant filed its Motion for Summary Judgment.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Id.* at 248. Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also*

[1] Plaintiff explained that the purpose of amending its complaint was “to increase its quantification of damages, allege delays by Battelle causing the additional damages, and to consolidate its claims into a single count.” (Mot. to Amend Compl. at 3.)

*E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

## DISCUSSION

### I. Count I of Plaintiff's Complaint.

In Count I, Plaintiff asserts a breach of contract claim against Defendant based on non-payment for services performed on the project pursuant to the Contract. (Am. Compl. ¶¶ 62-63.) In addition, Plaintiff alleges damages resulting from delay as part of Count I, asserting that

"Battelle caused Barclay White to incur additional General Conditions costs in performing its work at the Project for which Battelle has not paid Barclay White." (Am. Compl. ¶ 42.) Although the precise contours of Plaintiff's breach of contract claim are virtually impossible to identify,[2] this Court treats Count I as a claim based on Battelle's alleged failure to pay $995,164 in connection with CORs listed in Change Orders one, two, and three.[3]

Defendant contends that Plaintiff's breach of contract claim fails as a matter of law because Barclay did not comply with the notice provision at § 4.3 of the Contract. This provision states:

> 4.3 **CLAIMS AND DISPUTES**
>
> 4.3.1 **Definition.** A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes between the Owner and Contractor arising out

---

[2] Plaintiff makes the following allegations in its Complaint. Barclay contends that "[p]ursuant to the Contract, Barclay White is entitled to written change orders and a corresponding increase in the Contract price for the work it performed at the direction and request of Battelle and/or Himes that was in addition to, beyond or outside the scope of the original terms of the Contract ('Extra Work')." (Am. Compl. ¶ 6.) In particular, Barclay claims that it is owed money from Change Orders #1 and #2, which "are legitimate and remain outstanding in the amount of $624,870.00." (Am. Compl. ¶ 29.) Barclay further claims that it is "entitled to a third change order" in the amount of $222,006.00. (Am. Compl. ¶ 35.) Barclay also asserts that "Battelle is wrongfully withholding payment of the Contract balance in the amount of $125,595.00." (Am. Compl. ¶ 30.) Barclay alleges that "[d]espite several demands, Battelle has failed and/or refused to remit payments to Barclay White for the Extra Work it performed on the Project and for a portion of the Contract balance, and as a result, Barclay White sustained damages in excess of $972,071.00." (Am. Compl. ¶ 40.) Barclay further alleges that "Battelle has failed and/or refused to remit payment to Barclay White in excess of $1,078,465.00." (Am. Compl. ¶ 60.)

[3] This view of Barclay's claim is supported not only by Plaintiff's Amended Complaint, but also by its counsel's argument at the hearing on summary judgment, its memorandum in support of its motion for partial summary judgment, and an exhibit attached to its motion for partial summary judgment. (*See* Pl.'s Mem. Supp. Partial Summ. J. at 1, 9, Ex. N.)

> of or related to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.
>
> 4.3.2 **Time Limit on Claims.** Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

Defendant asserts that Plaintiff did not file a timely claim, in accordance with § 4.3.2 of the Contract, after its receipt of Battelle's May 10, 2004 letter to Barclay, which provided final payment. (*See* Def.'s Mem. Supp. Summ. J. at Ex. 9.) Defendant contends that it did not receive any notice from Barclay until 25 days after it sent the May 10, 2004 letter. However, as Barclay highlighted in its post-hearing submission to this Court, Battelle's May 10, 2004 letter was stamped as received by Barclay on May 21, 2004. (*See* Def.'s Mot. Summ. J. at Ex. 9.) Therefore, Barclay's June 4, 2004 letter was sent 14 days after May 21, 2004.

Regardless of whether Barclay's notice to Battelle was timely, Defendant contends that Barclay's June 4, 2004 letter was insufficient because the letter did not assert a "claim" as required by the Contract. Plaintiff contends it provided notice of its claims to Defendant, in accordance with § 4.3.1 of the Contract. The term "Claim" is a defined term in the Contract, as outlined above, and the Contract makes clear that all Claims must be submitted in writing.

Plaintiff argues that its June 4, 2004 letter expressed the following three Claims: (1) Battelle's improper deductions for allegedly defective work; (2) Battelle's incorrect determinations regarding disputed PCOs; and (3) Battelle's failure to pay for extra work. (*See* Pl.'s Post-Hearing Submission at 3.) More specifically, Barclay's June 4, 2004 letter states that it "unequivocally" does not "accept the recent check that we received for final payment for this project." (*See* Def.'s Mem. Supp. Summ. J. at Ex. 16.) The letter indicates that Arlend Knipe

will "under separate correspondence" answer each of the payments proposed by Battelle for "Change Order Proposals" and "disputed . . . "PCO's". (*Id.* at p. 1.) The letter states: "Please be aware that we are considering filing a claim for extension of general condition, since we received significant changes in scope." (*Id.* at p. 2.) In addition, the letter notes that "[t]here are two open change orders that have not been signed that are valued at $624,870. These are legitimate changes of scope and, per our contract; you are required to give us change orders for this work." (*Id.*) As previously noted, the letter closes by indicating that Barclay feels its "only method of solution is through the courts." (*Id.*)

The first two "claims" supposedly outlined in Barclay's June 4, 2004 letter – that Battelle made improper deductions for allegedly defective work and that Battelle made incorrect determinations regarding disputed PCOs – are not contained in Barclay's Amended Complaint. While courts try to afford plaintiffs some generosity and latitude in pleading their claims, *see Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001), such ". . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998). In this case, Plaintiff had the opportunity to amend its complaint and, at this late stage in this proceeding, cannot avoid summary judgment by shifting to a new legal theory in support of an alleged breach of contract claim.[4]

The last potential "claim" that Plaintiff asserts was outlined in its June 4, 2004 letter, Battelle's failure to pay for extra work, appears to summarize Barclay's complaint that Battelle

---

[4] Even if these allegations were included in Plaintiff's Amended Complaint, it is difficult for this Court to find that a written "claim," pursuant to section 4.3 of the Contract, was adequately defined by the rather vague assertions in the June 4, 2004 letter, which specifically contemplated separate correspondence on these issues. Plaintiff's counsel conceded at the summary judgment hearing that Barclay never followed up on these "claims" and never endeavored to substantiate them to Battelle prior to this litigation.

failed to approve two change orders valued at $624,870.[5] This "claim" is ultimately based on allegations in Plaintiff's Complaint – that Battelle allegedly failed to pay $995,164 in connection with CORs listed in Change Orders one, two, and three. The undisputed evidence, however, presented to this Court illustrates that Battelle paid Barclay for work related to Change Orders one, two, and three. Battelle paid Plaintiff for the Cost of the Work Plaintiff performed on the project and the Plaintiff's fee, totaling $13,224,405. (*See* Def.'s Mem. Supp. Summ. J. at Ex. 9.) This figure includes that total amount of Battelle approved Change Orders, accounting for $1,243,378. Included in the $1,243,378 worth of Change Orders paid by Battelle to Barclay is monies due for Change Order one and two ($624,870) and Change Order three ($222,006). (*See* Def.'s Mem. Supp. Summ. J. at Ex. 9; Def.'s Mem. Supp. Summ. J. at Ex. 20 (S. Galbraith Report of March 22, 2005).)[6] In sum, Defendant correctly notes that this undisputed evidence clearly shows that Plaintiff has been paid the appropriate amounts owed under Change Orders one, two, and three. (*See id.*)

Indeed, Plaintiff has not presented evidence indicated that these amounts were not included as part of the $13,224,405 paid by Battelle to Barclay. Instead, Barclay asserts that

---

[5] It is undisputed that Barclay never followed-up with written notice identifying its claim regarding "pending BWS Change Order Proposals" as stated in its June 4, 2004 letter. (*See* Def.'s Mem. Supp. Summ. J. at Ex. 16.) Indeed, absent such promised follow-up, it is difficult to identify the precise nature of Barclay's "claim" related to this issue from its June 4, 2004 letter.

[6] Plaintiff contends that Galbraith's Report is of limited value because he did not review certain CORs included in Change Order three. These additional CORs were not included in the total of $222,006 referenced in the Amended Complaint because they were not discovered until *after* the filing of the Amended Complaint. Plaintiff cannot create a genuine issue of material fact, however, by calling into question the thoroughness of Galbraith's review when Plaintiff did not include those very CORs in its Amended Complaint. Nor is this an instance where the parties have constructively amended the complaint by agreeing, even implicitly, to litigate the CORs not included in Plaintiff's Amended Complaint. *See* Fed. R. Civ. P. 15(b).

Battelle's accounting of these Change Order payments was improper because the GMP should have increased by the amount of these Change Orders. Whether Battelle should have increased the GMP is of no moment, however, to Barclay's claim in Count I, which seeks damages based on non-payment of Change Orders one, two, and three.[7] In an attempt to thwart summary judgment, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Furthermore, even the mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252. Quite simply, Plaintiff has not come forward with sufficient probative evidence to overcome summary judgment on its breach of contract claim, based on non-payment of Change Orders, as outlined in Count I of its Amended Complaint.[8]

Plaintiff also seeks damages for additional costs it incurred based on delay caused by Battelle based on § 8.3.3. of the Contract. As previously noted, § 8.3 addresses "Delays And Extensions of Time". These provisions of the Contract state:

---

[7] This Court notes the extent to which Plaintiff's legal theories have shifted throughout the course of this action. First, Barclay asserted that "Battelle is wrongfully withholding payment of the Contract balance in the amount of $125,595.00." (Am. Compl. ¶ 30.) This theory was abandoned during briefing on summary judgment when Barclay noted that it was not seeking the full GMP sum. (*See* Pl.'s Reply at p. 3-4.) Next, Barclay has pursued an "accounting based" theory noting that its accounting system shows that it actually cost Barclay $14,034,875 to complete the project. (*See id*.; *see also* Pl.'s Opp. to Def.'s Mot. Summ. J. at 32.) This theory is not grounded in Plaintiff's Amended Complaint and it did not provide sufficient notice of this "claim" to Defendant pursuant to § 4.3 of the Contract.

[8] The Affidavits of Peter Coyle attached in support of Plaintiff's response in opposition to Defendant's Motion for Summary Judgment do not create a genuine dispute of material fact on this claim because they do not assert probative facts and merely repeat verbatim Plaintiff's legal argument. *See Guinness PLC v. Ward*, 955 F.2d 875, 901 (4th Cir. 1992) ("the mere placement of . . . conclusory allegations and speculative assertions into affidavits or declaration without further legitimate support clearly does not suffice" to overcome summary judgment).

> 8.3.2 Any claim for extension of time by Contractor shall be made in writing to the Owner, Owner's Representative and Architect not more than fourteen (14) days after the commencement of the delay; otherwise it shall be waived.
>
> 8.3.3 In the event Contractor is delayed cumulatively by more than twenty (20) days in the progress of the Work by any causes that are solely the responsibility of Owner, then the Contract Time and the Contract Sum shall be adjusted by Change Order in accordance with Article 7; provided that an adjustment to the Contract Sum shall be limited to reimbursement for reasonable additional costs incurred by Contractor as a result of such delay in excess of twenty (20) days but not for any additional fee or profit.

As previously cited, Barclay's June 4, 2004 letter states: "Please be aware that we are considering filing a claim for extension of general condition, since we received significant changes in scope." (*See* Def.'s Mem. Supp. Summ. J. at Ex. 16, p. 2.) As a result, no such "claim" was actually filed within the fourteen days as required by § 8.3.2.[9] Plaintiff asserts that Defendant had actual knowledge that there were delays in the project and, therefore, § 8.3 of the Contract was satisfied. Plaintiff's argument misses the mark, as the Contract specifically requires notice when a party is going to pursue a delay *claim*.

Under § 13.1.1 of the Contract, this Court must apply Maryland law in interpreting the terms of this Contract. The United States Court of Appeals for the Fourth Circuit has noted that when a federal court's subject matter jurisdiction is based on diversity of citizenship, the court may consider unpublished state cases interpreting the state law at issue before the federal court. *See C.F. Trust, Inc. v. First Flight Ltd. Partnership,* 306 F.3d 126, 136 (4th Cir. 2002). In *J. Ronald Dashiell & Sons, Inc. v. County Comm'rs of Caroline County*, No. 677 (Md. Ct. Spec. App. Feb. 22, 1999), *affirmed by*, *County Comm'rs of Caroline County v. J. Ronald Dashiell &*

---

[9] In fact, a delay claim was not made until Plaintiff filed its Amended Complaint on July 22, 2005.

*Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000) the Maryland Court of Special Appeals, in an unpublished decision, interpreted similar contract provisions concerning delay of time. The Maryland Court of Special Appeals determined that Dashiell's delay claim failed because it was untimely and failed to provide an estimate of cost resulting from the delay. Therefore, Dashiell failed to comply with the notification obligation required by the contract. *See J. Ronald Dashiell & Sons, Inc. v. County Comm'rs of Caroline County*, No. 677 at p. 9 (Md. Ct. Spec. App. Feb. 22, 1999). Similar to this action, Dashiell indicated that it was *considering* filing a claim for delay, but it did not actually provide *notice* of a delay claim. *See id.* Under the terms of the Contact and under *Dashiell*, Barclay's written statement that it was *considering* filing a claim for delay is inadequate. Furthermore, Defendant's knowledge that the project was not completed on time is insufficient to satisfy the requirements of § 8.3, which clearly contemplates that a party to the Contract is entitled to notice within fourteen days when the other party seeks to make a delay claim.

Lastly, Plaintiff argues that under § 13.4.2 it does not waive its breach of contract claims by having failed to give written notice in accordance with the Contract. Section 13.4.2 states:

> No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, *except as may be specifically agreed in writing*.

(emphasis added). Clearly, both parties determined that a party would waive certain claims, pursuant to § 4.3 and § 8.3, if prior written notice was not provided within a certain time frame. Therefore, § 13.4.2 does not redeem Plaintiff's failure to provide written notice as required by the Contract and, as a result, does not salvage Plaintiff's breach of contract claim.

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED

as to Count I and Plaintiff's Motion for Partial Summary Judgment is DENIED.[10]

## II. Remaining Counts in Plaintiff's Complaint.

At the hearing on April 7, 2006, this Court GRANTED Defendant's Motion for Summary Judgment with respect to Counts II-IV of Plaintiff's Amended Complaint and DENIED Plaintiff's Motion for Partial Summary Judgment with respect to those same counts. The Court articulated its reasons for those rulings in open court. Those reasons are summarized below.

### A. Counts II & III.

Plaintiff's Amended Complaint asserts two quasi-contractual claims: unjust enrichment (Count II) and quantum meruit (Count III). This Court entered summary judgment in Defendant's favor on these counts because there is no dispute that an express contract between Plaintiff and Defendant exists and "quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." *County Comm'rs of Caroline County v. Dashiell*, 747 A.2d 600, 610 (Md. 2000).

Unjust enrichment and quantum meruit are "equitable remedies that permit recovery, where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Swedish Civil Aviation v. Project Mgmt. Enter.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (citations and quotation marks omitted). The elements of claims based on unjust enrichment and quantum meruit are: (1) benefit conferred upon defendant by plaintiff; (2) appreciation or knowledge by defendant of benefit; and (3) acceptance or retention by defendant of benefit under such circumstances as to make it inequitable for defendant to retain benefit without payment of its value. *Id*. at 792-93.

It is well-established in Maryland that quasi-contractual claims generally cannot arise

---

[10] *See infra* at Discussion § II.C.

where an express contract between the parties exists:

> The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

*Dashiell*, 747 A.2d at 607 (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 126 (Md. Ct. Spec. App. 1984)). At the hearing, Plaintiff's counsel conceded that an express contract exists between Barclay and Battelle that concerns the subject matter upon which Plaintiff's unjust enrichment and quantum meruit claims rest. As a result, Plaintiff's quasi-contractual claims fail under well-established principles of Maryland law. Accordingly, this Court GRANTED Defendant's motion for summary judgment with respect to Counts II and III of Plaintiff's Amended Complaint and DENIED Plaintiff's Motion for Partial Summary Judgment with respect to those same counts.[11]

**B. Count IV.**

Plaintiff's Amended Complaint asserts a claim under the Maryland Prompt Payment Act, Md. Code Ann., Real Prop. §§ 9-301-304, for Defendant's alleged failure to pay Plaintiff for "extra work." (*See* Am. Compl. ¶¶ 84-86.) This Court entered judgment in Defendant's favor on this claim because, as explained below, there is no amount of money in this case that is not

---

[11] At the hearing, Plaintiff attempted to characterize its quasi-contractual claims as "alternative" remedies that might allow Plaintiff to recover in case its breach of contract claim proved untenable. As this Court explained at the hearing, allowing quasi-contractual claims to proceed to trial in every breach of contract action would swallow up well-established principles of Maryland law. *See Dashiell*, 747 A.2d at 610 (allowing recovery on quasi-contractual claims where an express contract exists "would turn the basic foundations of contract law on its ear.").

disputed.

Under the Maryland Prompt Payment Act, a court may order an owner to pay a contractor "undisputed amounts owed under the terms of the written contract." Md. Code Ann., Real Prop. § 9-302(b)(1)(i). In addition, the court may order costs incurred in recovering the amount owed (*e.g.*, interest, reasonable costs, and attorneys' fees) and equitable remedies necessary to prevent further violations. *Id*. at § 9-303. Any award under the Maryland Prompt Payment Act, however, turns on the fact that the amount owed is undisputed. *Id*. at §§ 9-301-304. In this case, Defendant vigorously disputes the amount it allegedly owes Plaintiff. Specifically, Defendant contends that each of the change orders that form the basis of Plaintiff's claim for damages have already been paid. Although Plaintiff responded by arguing that this dispute is "manufactured," Plaintiff failed to support this claim with any specific facts. *See supra* at Discussion § I. As a result, this Court GRANTED Defendant's motion for summary judgment with respect to Count IV of Plaintiff's Amended Complaint and DENIED Plaintiff's Motion for Partial Summary Judgment with respect to that same count.

**C. Plaintiff's Motion for Partial Summary Judgment.**

Plaintiff's motion for partial summary judgment seeks legal determinations from this Court that Defendant is contractually obligated to (a) execute change orders for extra work performed by Plaintiff at construction project directed by Defendant; and (b) increase the Guaranteed Maximum Price or GMP of the Contract between Plaintiff and Defendant in an amount equal to the change orders. At the hearing, Plaintiff conceded that no cause of action would be resolved if this Court granted Plaintiff's motion for partial summary judgment. Under Fed. R. Civ. P. 56(a), summary judgment is generally inappropriate where it is not dispositive of an entire claim. *See* Fed. R. Civ. P. 56(a); *Classen Immunotherapies, Inc. v. King*

*Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 456 (D. Md. 2005) (quoting *Felix v. Sun Microsystems*, 2004 WL 911303 (D. Md. 2004)).[12] Accordingly, this Court DENIED Plaintiff's Motion for Partial Summary Judgment.

CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. A separate Order follows.

Dated: April 12, 2006

/s/
Richard D. Bennett
United States District Judge

---

[12] Partial adjudication of a claim is governed by Rule 56(d), which is entitled "Case Not Fully Adjudicated on Motion." That rule provides that if

> judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court . . . shall if practicable ascertain what material facts exist without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy. . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d). Plaintiff's motion for partial summary judgment cannot support the entry of an order under Rule 56(d) any more than it can support the entry of a judgment under Rule 56(a). First, Plaintiff's motion for partial summary judgment seeks a determination with respect to the rights and liabilities of parties to a contract, not an order identifying material facts that are not in dispute. Second, Plaintiff conceded at the hearing that its motion for partial summary judgment rests on facts that are disputed. Specifically, Plaintiff's counsel stated that in order to prevail on its breach of contract claim, it must establish the costs that were allegedly incurred by Plaintiff in connection with change orders for extra work. Plaintiff agreed that those costs are disputed by Defendant. Finally, as noted above, there is no genuine dispute with respect to the fact that each of the change orders that form the basis of Plaintiff's claim for damages were paid by Defendant. *See supra* at Discussion § I.